**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 26-cv-25667-ALTMAN**

**TAMERLAN ARSANUKAEV**,

*Petitioner*,

*v.*

**WARDEN KROME NORTH SERVICE PROCESSING CENTER**, *et al.*,

*Respondents.*

_________________________________/

**ORDER**

The Petitioner, Tamerlan Arsanukaev, has filed a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241 (the "Petition") [ECF No. 1], challenging his immigration detention. Arsanukaev asks us to order his "release from custody under reasonable conditions of supervision while his removal proceedings are pending . . . [or], [i]n the alternative, order [the] Respondents [(the "Government")] to provide . . . an individualized bond hearing at which the Government bears the burden of proving . . . that [the] Petitioner is a flight risk or a danger." Petition at 14. The Respondents oppose the Petition, arguing that Arsanukaev remains subject to mandatory detention "because he is an arriving alien." Response [ECF No. 7] at 2 (cleaned up). After careful review, we **DISMISS** the Petition.

## The Facts

Arsanukaev is a native and citizen of Russia. *See* Notice to Appear ("NTA") [ECF No. 7-3] at 1; *see also* August 12, 2026, Form I-213 at 2 ("I-213") [ECF No. 7-1]; Passport [ECF No. 1-2]. On March 9, 2023, he presented himself at the "San Ysidro Pedestrian West" port of entry in California and "applied for admission" to the United States. NTA at 1; *see also* I-213 at 2 ("The subject was

paroled on March 09, 2023, at SAN YSIDRO, CA, as a PORT OF ENTRY PAROLE."). The Department of Homeland Security ("DHS") identified Arsanukaev as "an arriving alien" and alleged that he lacked a "valid entry document." NTA at 1. DHS therefore charged him as inadmissible under § 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act ("INA"). *Id.* at 4. A Customs and Border Protection ("CBP") officer served Arsanukaev with the NTA that same day, directing him to "appear before an immigration judge" on November, 3, 2023. *Id.* at 1. Arsanukaev was then "paroled into the United States pending adjustment of status for a period of two . . . years." I-213 at 2.

"On January 31, 2024, [Arsanukaev's] counsel appeared at a . . . hearing on [Arsanukaev's] behalf . . ., conceded the sole charge of inadmissibility, and declined to designate a country of removal." Declaration of Deportation Officer [ECF No. 7-5] ¶ 11. "The Immigration Judge sustained the charge of removal and designated Russia as the country of removal." *Id.* ¶ 12. "On February 28, 2024, [Arsanukaev] filed applications for relief from removal with the Immigration Court." *Id.* ¶ 13. Specifically, Arsanukaev filed an application for asylum. *See* EROP [ECF No. 1-4] at 21–218.

Arsanukaev's parole expired on March 7, 2024. *See* Form I-94 [ECF No. 7-4] at 1 ("Admit Until Date: 03/07/2024"). On August 11, 2026, Immigration and Customs Enforcement ("ICE") officers responded to a request for assistance from CBP, arrested Arsanukaev, and took him into custody. *See* I-213 at 2 ("On August 11, 2026, officers from [ICE] Enforcement and Removal Operations (ERO) . . . responded to a request from [CBP] . . .[and] conducted a targeted arrest of the subject, ARSANUKAEV, Tamerlan . . . . ERO Miami officers assumed custody of the subject."); *see also* Declaration of Deportation Officer¶¶ 14–15 ("On August 11, 2026, was encountered by ICE ERO. On the same day, Petitioner was taken into ICE custody."). The next day, DHS issued a warrant for Arsanukaev's arrest.[1] *See* Arrest Warrant [ECF No. 7-7].

[1] Arsanukaev raises no issue with the sequencing of his arrest and the issuance of the warrant. *See generally* Petition. So, we do not address it here. *See Clark v. Sweeney*, 607 U.S. 7, 9 (2025) ("In our adversarial system of adjudication, we follow the principle of party presentation. The parties frame the

Arsanukaev filed this Petition while he was detained at the Krome North Service Processing Center. *See* Petition at 1. In it, he challenges his classification under 8 U.S.C. § 1225(b)(2). As redress, he asks us to order his release while removal proceedings are pending or, in the alternative, to order the Government to provide him with an individualized bond hearing. *See id.* at 14.

## THE LAW

The federal habeas corpus statute, 28 U.S.C. § 2241, "authorizes a district court to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Cadet v. Bulger*, 377 F.3d 1173, 1181–82 (11th Cir. 2004) (quoting 28 U.S.C. § 2241(c)(3)). This provision allows persons to challenge the legality of their "immigration-related detention[.]" *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also Guo Xing Song v. U.S. Atty. Gen.*, 516 F. App'x 894, 899 (11th Cir. 2013) ("[S]o long as an alien does not challenge a final order of removal, district courts retain jurisdiction under § 2241 to review habeas petitions, including challenges to an alien's detention.").

## ANALYSIS

Arsanukaev claims that he isn't subject to § 1225(b)(2) because "he was not 'seeking lawful entry into the United States after inspection by an immigration officer,' nor 'taking any cognizable step to obtain the rights and privileges of lawful entry.'" Petition at 7–8 (quoting *Hernandez Alvarez v. Warden, Fed. Det. Ctr. Miami*, 175 F.4th 1258, 1262 (11th Cir. 2026)). He contends that he "is therefore entitled to an individualized bond hearing under [8 U.S.C.] § 1226(a)." *Id.* at 8. And he alleges that, "[w]hen immigration officials paroled [him] in 2023, they necessarily determined that he was neither

issues for decision, while the court serves as neutral arbiter of matters the parties present." (cleaned up)).

a flight risk nor a danger." *Id.* at 9. So, he claims, because the Government has "identified no changed circumstance," under § 1226, "his re-detention is arbitrary and cannot stand."[2] *Id.* at 11.

The Respondents answer that Arsanukaev "is clearly an arriving alien who was seeking lawful entry after inspection because he presented at the border and was paroled." Response at 9. And, when the "Petitioner's parole expired on March 7, 2024[,] . . . he returned to the status of an arriving alien seeking admission into the United States." *Id.* at 10. His detention (the Respondents say) is therefore governed by § 1225(b)(2). *See id.* at 11 ("Petitioner is an arriving alien, rendering his detention lawful and, in fact, mandated by 8 U.S.C. § 1225(b)(2)."). We agree with the Respondents.

Section 1225(b)(2)(A) provides that, if an admissions officer determines that an alien "seeking admission" is not "clearly and beyond a doubt entitled to be admitted" into the United States, the alien "shall be detained for a proceeding under section 1229a." 8 U.S.C. § 1225(b)(2)(A). In *Hernandez Alvarez v. Warden*, the Eleventh Circuit explained that § 1225(b)(2)(A) imposes three requirements:

> [A]n alien shall be detained for a § 1229a proceeding if he (1) is arriving in the United States or is present in the United States without having been granted lawful entry; (2) is seeking lawful entry after inspection and authorization by an immigration officer; and (3) is not clearly and beyond a doubt entitled to lawful entry, as determined by the examining immigration officer.

175 F.4th at 1269 (cleaned up). As the court explained, the word "seeking" describes an "active and temporally ongoing step or process." *Id.* at 1268. The petitioners in that case, the court said, weren't "applying for entry in any literal sense *when they were detained*" following traffic stops. *Id.* at 1269

[2] It wasn't initially clear whether, when making this argument, Arsanukaev intended to assert a due-process challenge to his detention. *See* Petition at 4 ("This petition raises legal and constitutional questions—whether Petitioner is detained under § 1225(b) or § 1226(a), whether his re-detention without any individualized finding is lawful, and what process is due."); *id.* at 10 ("Persuasive authority confirms that a paroled asylum seeker retains a protected liberty interest in remaining free."). But he nowhere directly advances such a claim. *See generally* Petition. And, in a recent Motion to Expedite [ECF No. 10], he clarified that "[t]he Petition presents one question: whether [the Immigration and Nationality Act ("INA")] § 236(a), 8 U.S.C. § 1226(a), rather than INA § 235(b)(2)(A), § 1225(b)(2)(A), governs the Petitioner's detention." Motion to Expedite at 3. Recognizing that Arsanukaev didn't advance a due-process claim—and respecting the party-presentation principle—we won't address any due-process challenge here. *See Clark*, 607 U.S. at 9.

(emphasis added). Nor (the court continued) could the government establish that they were "seeking" admission merely because they contested their removal proceedings; after all, "seeking relief from removal is not the same thing as seeking admission[.]" *Id.* at 1285.

But *Hernandez Alvarez* didn't address our facts—which involve a petitioner who was paroled into the country. *See Sylvaince v. Warden, Miami Fed. Det. Ctr.*, 2026 WL 2568522, at *2 (S.D. Fla. Aug. 31, 2026) (Ruiz, J.) (observing that *Hernandez Alvarez* "did not specifically address" a petitioner's "circumstances as an individual initially paroled into the country"). Congress allows parole of "any alien applying for admission," but it expressly provides that parole "shall not be regarded as an admission of the alien." 8 U.S.C. § 1182(d)(5)(A). When parole ends, the alien "shall forthwith return or be returned to the custody from which he was paroled," after which "his case shall continue to be dealt with in the same manner as that of any other applicant for admission." *Ibid.* The regulations likewise provide that the parole's expiration restores the alien to "the status that he or she had at the time of parole." 8 C.F.R. § 212.5(e)(1)(ii), (e)(2)(i). Indeed, "[a]n arriving alien remains an arriving alien" even after parole "is terminated or revoked." 8 C.F.R. § 1.2 (defining an "Arriving alien" as "an applicant for admission coming or attempting to come into the United States at a port-of-entry, or an alien seeking transit through the United States at a port-of-entry, or an alien interdicted in international or United States waters and brought into the United States by any means, whether or not to a designated port-of-entry, and regardless of the means of transport," and noting that "[a]n arriving alien remains an arriving alien even if paroled pursuant to section 212(d)(5) of the Act, and even after any such parole is terminated or revoked").

This conclusion comports with the Eleventh Circuit's longstanding understanding that a paroled alien "remains constructively at the border, seeking admission and subject to exclusion proceedings." *Assa'ad v. U.S. Att'y Gen.*, 332 F.3d 1321, 1338 (11th Cir. 2003). And the Supreme Court has said that arriving aliens, "even those paroled elsewhere in the country for years pending removal,"

are treated for due-process purposes "as if stopped at the border." *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 139 (2020) (cleaned up).

Which brings us to the question presented here: Does an alien who sought admission at a port of entry remain subject to the provisions of § 1225(b)(2) when he's re-detained inside the country *after* being temporarily paroled? We think he does because, unlike the petitioners in *Hernandez Alvarez*, Arsanukaev satisfies all three of the Eleventh Circuit's requirements for an alien to be considered "an arriving alien" subject to mandatory detention under § 1225(b)(2). *See Hernandez Alvarez*, 175 F.4th at 1269 (holding that "an alien shall be detained for a § 1229a proceeding if he (1) is arriving in the United States or is present in the United States without having been granted lawful entry; (2) is seeking lawful entry after inspection and authorization by an immigration officer; and (3) is not clearly and beyond a doubt entitled to lawful entry, as determined by the examining immigration officer" (cleaned up)). *First*, Arsanukaev was "arriving in the United States" without having been granted lawful entry. *Hernandez Alvarez*, 175 F.4th at 1269. He presented himself at the San Ysidro port of entry and was identified as "an arriving alien." NTA at 1. Although he was later "paroled into the United States," I-213 at 2, the law is clear that parole "shall not be regarded as an admission," 8 U.S.C. § 1182(d)(5)(A). And, because an arriving alien "remains an arriving alien" even after parole expires, 8 C.F.R. § 1.2, his physical presence in the interior of the country doesn't alter his classification.

*Second*, Arsanukaev was affirmatively "seeking lawful entry after inspection and authorization by an immigration officer[.]" *Hernandez Alvarez*, 175 F.4th at 1269. He "applied for admission" at the San Ysidro port of entry, where an immigration officer inspected him and served him with an NTA ordering him to appear before an immigration judge. NTA at 1. His resulting removal proceedings thus arose from an actual application for admission, rather than from the mere act of "contesting one's removal." 175 F.4th at 1284. Unlike the petitioners in *Hernandez Alvarez*, then, who were "only

present in the country," 175 F.4th at 1269, Arsanukaev had affirmatively sought admission and remained "constructively at the border, seeking admission[.]" *Assa'ad*, 332 F.3d at 1338.

*Third*, Arsanukaev wasn't "clearly and beyond a doubt entitled to lawful entry, as determined by the examining immigration officer." *Hernandez Alvarez*, 175 F.4th at 1269. Indeed, when he presented himself at the port of entry, immigration officials determined that he *lacked* the required "valid entry document" and charged him as inadmissible under § 212(a)(7)(A)(i)(I). NTA at 1, 4.

That Arsanukaev was paroled doesn't change any of these facts. Parole, as we've said, "shall not be regarded as an admission," and Congress has directed that an alien return to "the custody from which he was paroled." 8 U.S.C. § 1182(d)(5)(A). Moreover, § 1225(b)(2) "mandate[s] detention of aliens throughout the completion of applicable proceedings," not merely until those proceedings commence. *Jennings v. Rodriguez*, 583 U.S. 281, 302 (2018). Arsanukaev's re-detention therefore occurred during the same admission process that began when he presented himself at the San Ysidro port of entry. This distinction gives effect to *Hernandez Alvarez*'s requirement that the alien must be "seeking" admission when he's detained—without treating participation in removal proceedings as an independent application for admission. 175 F.4th at 1269, 1284.

We recognize that district courts are split on this issue. In *Sylvaince v. Warden, Miami Fed. Det. Ctr.*, for instance, Judge Ruiz of our Court held that an alien "re-detained in the interior after living in the United States for years" *was* subject to the strictures of § 1226(a). 2026 WL 2568522, at *3 (S.D. Fla. Aug. 31, 2026) (Ruiz, J.) (cleaned up); *see also Velasquez-Lopez v. Warden, Krome N. Serv. Processing Ctr.*, 2026 WL 2349503, at *2 (S.D. Fla. Aug. 13, 2026) (Bloom, J.) (same). Still, other judges have concluded, as we do here, that previously paroled arriving aliens remain subject to mandatory detention. *See, e.g.*, *Cabrera v. Ripa*, 2026 WL 2253670, at *3 (S.D. Fla. Aug. 5, 2026) (Damian, J.) (relying on *Thuraissigiam*'s observation that aliens paroled "for years pending removal" should be treated "as if stopped at the border"); *Mesadieu v. U.S. Immigr. & Customs Enf't*, 2026 WL 2792854, at *1 (S.D. Fla.

Sept. 10, 2026) (Kuntz, J.) (concluding that previously paroled arriving aliens remain subject to § 1225(b), under which "arriving aliens are not entitled to bond hearings and are subject to mandatory detention").

To be sure, an alien's classification as an arriving alien cannot, standing alone, satisfy *Hernandez Alvarez*'s separate requirement that he be "seeking admission." 175 F.4th at 1268–69. But Arsanukaev *actually sought* admission at the border, and Congress expressly provided that, following parole, he must return to "the custody from which he was paroled" while "his case shall continue." 8 U.S.C. § 1182(d)(5)(A). We cannot reconcile this directive with a rule that allows arriving aliens to evade mandatory detention by "simply overstaying their parole period." *Mesadieu*, 2026 WL 2792854, at *2. Temporary parole cannot become a mechanism for escaping the very custody to which § 1182(d)(5)(A) expressly requires an alien to return.

Because Arsanukaev satisfies *Hernandez Alvarez*'s three requirements—and since his detention remains governed by the provisions of § 1225(b)(2)—he isn't entitled to a bond hearing under § 1226(a). *See* 8 C.F.R. § 1003.19(h)(2)(i)(B) (excluding "[a]rriving aliens in removal proceedings, including aliens paroled after arrival," from IJ bond redeterminations). We therefore **DENY** his statutory challenge.

* * *

After careful review, therefore, we **ORDER and ADJUDGE** that the Petition [ECF No. 1] is **DISMISSED**. The Petitioner's Motion to Expedite [ECF No. 10] is **DENIED AS MOOT**. We direct the Clerk of Court to **CLOSE** this case and **TERMINATE** any pending motions and deadlines.

**DONE AND ORDERED** in the Southern District of Florida on November 10, 2026.

**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc: Counsel of record